**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**JACQUELINE V. o/b/o J.V.,**

**Plaintiff,**

      **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

**Defendant**.

**Case No. 1:22-cv-00576-TPK**

**OPINION AND ORDER**

**OPINION AND ORDER**

Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on June 1, 2022, denied Plaintiff's application for supplemental security income on behalf of her minor child.  Plaintiff has now moved for judgment on the pleadings (Doc. 12), and the Commissioner has filed a similar motion (Doc. 13).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner**.**

**I.  BACKGROUND**

On January 6, 2020, Plaintiff protectively filed her application for benefits, alleging the child's disability beginning on September 1, 2017. That application was denied initially and on reconsideration.  An Administrative Law Judge then held hearing on August 3, 2021.  Plaintiff, who is the child's mother, testified at that hearing.

The ALJ issued an unfavorable decision on August 30, 2021.  He found, first, that the child was born on July 12, 2011, and was a school-age child both at the time of the application and at the time of the decision.  Next, the ALJ determined that the child had not engaged in substantial gainful activity since the application date and that he had one severe impairment, namely attention deficit hyperactivity disorder (ADHD).  He further found that this impairment did not meet the criteria for disability under the Listing of Impairments, nor did it functionally equal a listed impairment.  Because that is the standard for determining whether a child suffers from a disability within the meaning of the Social Security Act, the ALJ denied the claim.

In her motion for judgment on the pleadings, Plaintiff raises these two issues, stated here _verbatim_:

    1.  The ALJ's bullet-pointed domain findings are unsupported by substantial

evidence and leave the ALJ's decision unamenable to meaningful review by this Court.

2. The ALJ failed to properly consider the consistency between the opinions submitted in this case.

Plaintiff's memorandum, Doc. 12-1, at 1.

## II. THE KEY EVIDENCE

### A. Hearing Testimony

Plaintiff began by testifying to the problems she had with her son. They included his not getting along with others, being unable to sit or stand still in a regular classroom, and having trouble with schoolwork. He needed one-on-one attention to complete assignments and was easily frustrated or overwhelmed. The child was able to do household chores with his mother but needed reminders when doing so. He did play outside with friends but often did not want others to participate in activities with him. There were also occasions where he would fight with his siblings.

When asked about schoolwork, Plaintiff said her son's achievement was at a very low level. She further testified that he was not taking any medication for his condition but had been started in counseling. She said that she had concerns about the side effects of medication.

### B. Medical and Other Evidence

The relevant records show the following. In 2017, based on concerns expressed by the child's kindergarten and first grade teaches and based on observation of his behavior, he underwent an attention screening. The results showed that, according to his mother, he had clinically significant levels of inattention and hyperactivity/impulsivity as well as peer relations and emotional lability. His teacher noted high scores in several areas as well including ADHD-Hyperactive Impulsive type. The school psychologist concluded that his distractibility was a barrier to his classroom learning and that he was in need of significant redirection and attention strategies.

The child's third grade teacher, Ms. Silveri, completed a questionnaire on February 10, 2020. She stated that he was on grade level in reading and writing but not in math and that he frequently missed school. In the various domains that are evaluated in connection with a child's disability application, she noted obvious problems in the areas of learning new information, applying problem-solving skills, sustaining attention, carrying out simple instructions, waiting to take turns, changing from one activity to another, completing his work accurately, working at a reasonable pace, interpreting body language and facial expressions, and using adequate vocabulary to express his thoughts.

She thought he had a serious problem in other areas, primarily in paying attention when spoken to, focusing long enough to finish a task, carrying out multi-step instructions, organizing his things, completing assignments, seeking attention in an appropriate manner, and following rules. Ms. Silveri noted that he got extra support in math, needed additional reminders to stay focused, and sometimes sat alone to help him focus. Later in the year, on his report card, Ms. Silveri stated that the child inconsistently met the expectations of distance learning but he did thrive with positive reinforcement. She also rated his math skills as in the limited proficiency range, but he was better in reading and writing except for writing coherently and clearly.

Mrs. Bartkowski, who taught the child during the 2020-21 school year, also completed a questionnaire and rated the child's English, writing, and math skills as generally in the limited proficiency range, although he demonstrated proficiency in science and social studies. His strengths appeared to be in the areas of art and music. In her written comments, Mrs. Bartkowski noted that the child had attendance problems (he was attending school remotely due to the pandemic) but that he was hard-working when he applied himself. She also filled out another form on which she indicated that the child had a very serious problem in multiple areas including doing math problems, providing organized oral explanations, expressing ideas in written form, recalling and applying learned material, and applying problem-solving skills in class discussions. The same, she said, was true for his ability to pay attention, sustain attention, refocus, change activities, organizing his things, completing assignments, working without distractions, and working at a reasonable pace. He also had problems with following rules and respecting authority figures.

### C.  Opinion Evidence

The only opinion evidence other than the teacher evaluations which was considered by the ALJ came from Mr. Cheeves, a treating counselor, who completed a medical statement regarding ADHD on June 25, 2021. He thought the child had difficulty sustaining attention in work and play, often had difficulty organizing tasks and activities, was easily distracted by extraneous stimuli, suffered from mild inattention, moderate impulsiveness, and severe hyperactivity, was mildly impaired in the areas of social functioning and personal functioning, and was markedly impaired in the area of maintaining concentration, persistence, and pace. He commented that the child's ADHD symptoms produced impulsivity which was affecting his schoolwork.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary

review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV. DISCUSSION

### A. Standard for Child's Disability

This Court has explained, in past decisions, the regulatory framework under which a child's disability claim is judged. As stated in *Will o/b/o C.M.K. v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 419, 422–23 (W.D.N.Y. 2019),

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). An ALJ follows a three-step sequential evaluation to determine whether a child is entitled to SSI benefits. *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 75 (2d Cir. 2009). "First, the child must not be engaged in 'substantial gainful activity.' Second, the child 'must have a medically determinable impairment(s)' that is 'severe' in that it causes 'more than minimal functional limitations.' Third, the child's impairment or combination of impairments must medically or functionally equal an impairment listed in an appendix to the regulations." *Id*. (quoting 20 C.F.R. § 416.924).

The limitations caused by a child's severe impairment are evaluated pursuant to

-4-

six domains of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.' " *Encarnacion*, 568 F.3d at 75 (quoting 20 C.F.R. § 416.926a(a)). "A marked limitation is more than moderate but less than extreme and interferes seriously with a child's ability to independently initiate, sustain, or complete activities. An extreme limitation is more than marked and interferes very seriously with a child's ability to independently initiate, sustain, or complete activities." *Id.* (internal quotations and citations omitted).

## B. The ALJ's Decision

After summarizing the evidence from the child's teachers, the attention review, and from Dr. Reeves - and after concluding that the state agency reviews should be given no weight because the reviewers did not have a full record to consider - the ALJ made his decision as follows:

The claimant's statements about the intensity, persistence, and limiting effects of the alleged symptoms are not fully supported by the record. The record supports the claimant's allegations of a marked limit in attending and completing tasks, given his poor attendance, refusal to comply with remote learning, need for redirection strategies and close observation to keep him on task at home, and the consistent opinion evidence that this is the claimant's most significant area of impairment. An extreme limit is not adopted given his performance in the in-person setting, the lack of treatment with either counseling or medication for most of the period at issue, and the largely positive narrative reports from his school. Less than marked limits are found in acquiring and using information, given the claimant's at or near grade level performance, his ability to be redirected, and the objective testing in the record. School reports also show some difficulty in following rules, which justifies a less than marked limit in social interaction, as do the claimant's mother's reports of his conflicts outside school, but the claimant has pleasant and well related in the school setting, which is not indicative of a marked limit here. Allegations of caring for himself and health and physical well being are supported to the extent the record supports a less than marked limit in each domain, as the claimant needs redirection to perform chores at home, has put feces on the walls, refuses to go to school, and requires occasional pediatric care for transient illnesses, but the claimant's in person teacher found no issues here, and his recent treating therapist agreed there was not a marked limit in either domain. This also accounts for the claimant's obesity by body mass index. There is no evidence of any limit in moving about or manipulating objects.

Accordingly, the claimant does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

(Tr. 20).

### C. Substantial Evidence

Plaintiff's first claim of error focuses on the portion of the ALJ's decision which the Court has quoted above. Although that paragraph does recite the ALJ's findings as to each of the six domains of functioning, Plaintiff argues that it is deficient because it "does not include any record citations and presents only conclusory findings without any explanation" and because it does not build a bridge between the factual portion of the decision and the ultimate conclusions which the ALJ reached. *See* Plaintiff's memorandum, Doc. 12-1, at 11. These failings, according to Plaintiff, preclude any meaningful review of the ALJ's reasoning process. Plaintiff adds that the ALJ did not compare the child's performance level to those of his peers and did not acknowledge the evidence which showed that he was deficient in his academic performance. In response, the Commissioner contends that the ALJ did properly explain his conclusions with reference to the relevant evidence, particularly in those portions of the decision which preceded the concluding paragraph, so that the Court has a basis for reviewing the decision.

In support of his argument that a remand is warranted, Plaintiff cites this Court's decision in *Tiffany R. o/b/o A.E.R.S. v. Comm'r of Soc. Sec.*, 2021 WL 3722187 (W.D.N.Y. Aug. 23, 2021). In ordering a remand in that case, the Court noted that the ALJ "did not evaluate specific Listings in Step Two or give rationale in Step Three for the domains. Instead, [the] ALJ ... summarized the six domains in bullet points without analysis." *Id*. at *5 (W.D.N.Y. Aug. 23, 2021). The decision in question was the second one made in that case, and the ALJ evaluated the impairments differently in each decision without explaining why. That factor is certainly not present here, nor did the ALJ in this case simply list his findings without any analysis of the evidence. The *Tiffany R.* decision is therefore not particularly helpful here, but it still leaves open the question of whether the ALJ here provided enough reasoning for his decision so that the Court can engage in meaningful review. *See, e.g., Loescher v. Berryhill*, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) ("it is the ALJ's responsibility—and not the job of the Commissioner's attorney—to 'build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review.' *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012). The Court 'cannot ... conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered.' *Id*.").

After reviewing the ALJ's decision in its entirety, the Court finds that Plaintiff's first argument is without merit. While the ALJ did not specifically cite to the evidence in his concluding paragraph, he did so earlier in the decision, accurately summarizing the reports from the teachers and counselors who evaluated the child's performance. In the key paragraph at

issue, the ALJ did not just list his findings (he did that earlier in the decision) but also provided his reasoning with respect to each of the domains of functioning. Without going through each issue in detail, the Court notes that the following statement is indicative of a reasoning process that is tied to the evidence and which permits the Court to determine if the ALJ has actually considered the facts and engaged in a reasoning process:

> School reports also show some difficulty in following rules, which justifies a less than marked limit in social interaction, as do the claimant's mother's reports of his conflicts outside school, but the claimant has (sic) pleasant and well related in the school setting, which is not indicative of a marked limit here.

(Tr. 20). Overall, there is enough reasoning in the ALJ's decision for the ALJ to have avoided the legal error upon which Plaintiff's claim of error is based.

## D. Consistency of the Opinions

In her second claim of error, Plaintiff notes that the touchstones of evaluating opinion evidence are the factors of consistency and supportability. She argues that the ALJ did not apply those factors correctly here, failing to mention them when evaluating the opinion of Mr. Cheeves, and also making findings which disregarded the fact that all of the opinion evidence supports the finding of an extreme limitation in the domain of attending and completing tasks. In response, the Commissioner argues that the ALJ explicitly mentioned both consistency and supportability when evaluating Mr. Cheeves' opinion and that he properly interpreted the totality of the opinion evidence in concluding that the child did not have an extreme limitation in the domain of attending and completing tasks or two marked limitations in the six relevant domains of functioning.

This Court has explained how the regulations for evaluating expert medical opinions function after they were revised in March of 2017:

> First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

> Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id.* The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and

consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, the regulations also alter the way the ALJ discusses medical opinions in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

*Michael H. v. Comm'r of Soc. Sec.*, 2022 WL 768658, at *5 (W.D.N.Y. Mar. 14, 2022).

Here, the ALJ treated the observations of the child's third and fourth grade teachers and of Dr. Cheeves as opinion evidence. He gave the most weight to third-grade teacher Ms. Silveri's views, finding them to be "based on a long-term, in-person observation period, and well supported by the longitudinal record" and therefore "generally persuasive." (Tr. 19). He next found Mrs. Bartkowski's opinion to be partially persuasive, noting that she taught the child remotely and that he was absent or off-task for significant periods during the school year. He also discounted portions of her opinion based on the child's pediatric records, other school reports, and the fact that he had not been treated for ADHD to any great extent. *Id*. Lastly, he did not find Mr. Cheeves' opinions to be more than somewhat persuasive because there were no treatment records accompanying the opinion, Mr. Cheeves had been treating the child for only two months, and there was "no clear support for these assessments." (Tr. 20).

It is incorrect to say, first, that the ALJ did not follow the regulations concerning supportability and consistency when evaluating these opinions. For each of the three sources, he reviewed the evidence in support of and consistent or inconsistent with each opinion, specifically mentioning those factors in connection with Mr. Cheeves' opinion, *see* Tr. 20. As to the assertion that the only conclusion to be drawn from this record is that the child has an extreme limitation in the domain of attending and completing tasks, Mr. Cheeves, whose opinion was given some weight, viewed this limitation as marked rather than extreme. Ms. Silveri rated the child's problem in this area as serious, but she did not indicate that the problem was very serious in any of the 13 categories on which his functioning was evaluated, and she actually rated the problem as obvious, rather than serious, in six of those 13 areas. It also appears from the form she completed that sitting independently helped him to focus. The Court cannot say that no reasonable person reviewing this evidence could conclude that the child's impairment in this domain was marked rather than extreme. As the court observed in *Perkins ex rel. J.P. v. Astrue*, 32 F. Supp. 3d 334, 340 (N.D.N.Y. 2012), when faced with a similar argument,

Although a reasonable person might review the evidence and assess an extreme impairment as to this domain [of acquiring and using information]..., this Court

cannot impose its own views where, as here, the Commissioner's judgment is based upon adequate findings supported by the evidence.

Because that describes the situation here, the Court finds no merit in Plaintiff's second claim of error, and no basis for ordering a remand.

### V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 12), **GRANTS** the Commissioner's motion (Doc. 13), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

**/s/ Terence P.  Kemp**
**United States Magistrate Judge**